AMERICAN STEEL & WIRE CO v. COOVER *et al.*

No. 613.    Opinion Filed September 13, 1910.

(111 Pac. 217.)

1.    APPEAL AND ERROR—Case-Made—Sufficiency—Review of Evidence.    Alleged errors presented for review that require an examination of all the facts cannot be considered, unless the case-made contains an averment by way of recital to the effect that the case-made contains all the evidence introduced at the trial. But a statement in a case-made preceding the evidence to the effect that "the following evidence was introduced, same being all the evidence introduced by both parties at the trial," whereupon the evidence follows, is a sufficient compliance with

the rule to authorize a review of alleged errors requiring a consideration of all the facts.

2.    **BANKRUPTCY—Adjudication Against Partner—Attachment of Firm Assets for Firm Debts—Validity.** Where one of two members constituting a firm is adjudicated a bankrupt, but there is no adjudication against the firm, the property of the firm does not pass to the trustee of the estate of the individual bankrupt; and such adjudication does not defeat an attachment lien of a firm creditor who has caused an attachment to be levied on a portion of the firm's assets within four months prior to the adjudication of the individual as a bankrupt, nor does it require that such attachment shall be discharged.

(Syllabus by the Court.)

*Error from District Court, Muskogee County; Malcolm E. Rosser, Judge.*

Action by the American Steel & Wire Company against Carl E. Coover and O. E. Coover. Judgment for defendants, and plaintiff brings error. Reversed, with instructions.

This is an action brought by plaintiff in error, plaintiff below, against defendants in error, Carl E. Coover and O. E. Coover, doing business under the firm name and style of Coover Hardware Company, to recover on a promissory note for the sum of $1,082 and interest, executed on the 31st day of January, 1907, and signed by Coover Hardware Company. Ancillary to the main action, plaintiff sued out a writ of attachment, which was levied upon certain property of the partnership. Subsequently a receiver was appointed on application of plaintiff, who took charge of the property attached, and later, by agreement of the parties, said property was sold and the money ordered to be held by the receiver subject to the order of the court on the final hearing of the cause. Defendants by their answer deny that they constitute a partnership, and allege that Carl E. Coover alone was doing business under the style and firm name of Coover Hardware Company. They admit the execution of the note sued on, but allege that O. E. Coover had nothing to do with the indebtedness it represents, and was not a party to the execution of. the note. Further answering, they allege as a defense that in the month of March, 1907, within four months of the filing of this action and the execution of the note,

the defendant Carl E. Coover had filed his application in the federal District Court to be adjudged a bankrupt, and denied all the grounds of attachment alleged in plaintiff's petition.    The action was originally instituted in the United States Court for the Western District at Muskogee before the admission of the state.    Upon admission of the state, it was transferred to the district court of Muskogee county, where a trial was had to the court without the intervention of a jury.    The court found that Coover Hardware Company was composed of O. E. Coover and Carl E. Coover, and found all the issues of fact in the main action in favor of plaintiff, and rendered judgment against defendants for the amount of the note.    But the court found that the defendant Carl E. Coover had filed a petition in bankruptcy, and had been adjudged a bankrupt within four months from the bringing of this action, and for that reason dissolved the attachment, and ordered the receiver to pay the proceeds of the attached property over to the clerk of the court. No appeal has been taken by defendants, and plaintiff prosecutes this proceeding from only that part of the judgment of the trial court which dissolves the attachment.

*Masterson Peyton* and *Matthew G. Mason,* for plaintiff in error.—Citing *In re Mercur,* 122 Fed. 384, and *In re Myer,* 98 Fed. 976.

*W. T. Hutchings, Geo. A. Murphey,* and *W. P. Z. German,* for defendants in error.

HAYES, J. (after stating the facts as above).    The question which we are asked to determine by this proceeding requires a consideration of all the evidence, and defendants object to any consideration thereof, upon the ground that the case-made does not contain an averment by way of recital that it contains all the evidence.    That, in order to authorize this court to review any alleged error which requires an examinaton of all the evidence, the case-made must contain an averment by way of a recital to the effect that it contains all the evidence, has been frequently held (*Wagner v. Sattley Mfg. Co.,* 23 Okla. 52, 99 Pac. 643), but the objection of defendants in error to the record in this case is not well founded

in fact. There is nothing in the rule which requires the case-made to contain such averment that prescribes any definite language to be used or the place in the case-made at which the same shall appear. Just preceding the evidence in this case-made appears the following statement:

"And thereafter, to wit, on the 9th day of July, 1908, said cause comes on for hearing, and the plaintiff appearing by its attorney of record, Masterson Peyton, Esq., and the defendants appearing by their attorneys, Hutchings, Murphey & German, by agreement of parties, a jury is waived and cause submitted to the court sitting as a jury, whereupon the following proceedings were had, and the following evidence was introduced, same being all the evidence introduced by both parties at the trial."

Then follows the evidence. Had the foregoing statement followed the evidence in the record and been made to read, "the foregoing evidence was introduced, same being all the evidence introduced by both parties at the trial," there could not be any question of its sufficiency; but the meaning of such statement would not be different from the one appearing in the case-made. Each is equivalent to averring that the evidence in the case-made is all the evidence that was introduced, and complies with the requirement of the rule.

Defendant O. E. Coover is the father of defendant Carl E. Coover. They were engaged in a general hardware and implement business in the town of Haskell, in this state. The business was managed principally by the son. The father, who is a resident of the state of Missouri, furnished practically all, if not all, the capital that went into the business. The son advertised to the public the fact that his father was a member of the firm, and appears to have held him out continually as a member of the firm until the commencement of this proceeding. The evidence does not disclose whether the partnership is in an insolvent condition, but it does appear that O. E. Coover is solvent. There is no evidence whatever relative to the bankruptcy proceedings of Carl E. Coover. Defendants allege in their answer that within four months preceding the institution of this action Carl E. Coover filed his petition to be

adjudicated a bankrupt; and counsel for plaintiff at the trial admitted, without the introduction of evidence, that such petition had been filed and Carl E. Coover adjudicated a bankrupt as alleged in the answer. The foregoing constitutes all the facts in the record relative to said bankruptcy proceeding. No petition has ever been filed by or against the partnership for its adjudication as a bankrupt. The property attached in this proceeding was the property of the partnership and not of the individual Carl E. Coover.

Section 67 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3449]) provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee. There can be no doubt that, if the partnership had been adjudicated a bankrupt, such adjudication would have discharged the attachment; and it appears that the learned trial court entertained the view that, by reason of this section, the adjudication of Carl E. Coover individually as a bankrupt had that effect, and that the attached property passed to the trustee as part of the estate of Carl E. Coover, bankrupt. In this view, we think the court fell into error. The better reasoned current authorities construing and applying the bankruptcy act of 1898 agree that, in contemplation of that statute, a partnership is a distinct separate entity from the individual partners who compose it, and that a partnership can be adjudicated a bankrupt only when a petition therefor has been filed by it or directed against it, alleging an act of bankruptcy in which it is involved. A proceeding in bankruptcy may be prosecuted against the partnership, and it be adjudicated a bankrupt without any proceeding prosecuted against the individual members of the partnership and without their being adjudicated bankrupts individ-

ually, and the individual partners may be adjudicated bankrupts without involving the partnership. *In re Myer et al.*, 98 Fed. 976, 39 C. C. A. 368; *In re L. Stein & Co.*, 127 Fed. 547, 62 C. C. A. 272; *In re Bertenshaw*, 157 Fed. 363, 85 C. C. A. 61, 17 L. R. A. (N. S.) 886.

In the last cited case Mr. Circuit Judge Sanborn, delivering the opinion of the court, said:

"A partnership owns its own property, and owes its own debts. It, its property, and its debts are separate and distinct from the individuals who compose it, from their individual property, and from their individual debts. The partnership does not own, cannot assign or apply to the partnership debts, the individual property of its members, nor is it liable for their debts. The most that a creditor of a partner can secure from a partnership or from its property is the excess of the latter after the partnership debts have been paid. The partners and their individual property are to a limited extent, to the extent of the excess of their individual property over their individual debts, but not to the full extent of ordinary indorsers or indemnitors, sureties for the debts of the partnership. The act of 1898 recognized these patent facts, and provided for separate adjudications of the partnership and of its members. Under this act, the partnership may make an assignment or commit some other act of bankruptcy and be adjudged a bankrupt while many of its members are solvent, and cannot be so adjudged. On the other hand, some of its members may be adjudged bankrupts while the partnership is not subject to such an adjudication."

The debt this plaintiff is trying to collect in this case is a partnership debt. The property which he is endeavoring to have appropriated to the payment of that debt is partnership property, and not the property of the individual partner who was adjudicated a bankrupt. Had the partnership been adjudicated a bankrupt, then, under the section of the act of 1898 above referred to, the attachment having been levied within four months prior to the adjudication, while the partnership was insolvent, such adjudication would have dissolved the attachment. But does the adjudication of the individual members of the partnership draw into the bankruptcy proceeding the assets of the partnership of which the bank-

rupt is a member, but against which no bankruptcy proceedings are pending? This question, we think, must upon reason and the authorities be answered in the negative. *In re Mercur*, 122 Fed. 384, 58 C. C. A. 472, was a case wherein both of the two persons composing a firm had been in separate proceedings instituted against them adjudged individually to be bankrupts, but there had been no proceeding against or adjudication of the firm. The partnership within four months prior to the adjudication of the individual partners as bankrupts had made assignment of parts of its property for the benefit of its creditors. The trustee of the individual bankrupts' estates sought to recover from the assignee of the partnership this property, but the court denied him relief, and held that the adjudication of the individual partners did not give the court jurisdiction of the firm assets, and that, in order for the court to obtain jurisdiction thereof, it was necessary that there be an adjudication of the partnership as a bankrupt. The court quoted approvingly from the opinion of the District Court in that case (116 Fed. 655) the following:

"There has been no adjudication against the firm, and the trustee was not appointed to represent it, but only the two members who happened to compose it in their separate and individual capacity. Under such circumstances, the trustee has no authority to demand or interfere with the firm assets. This is settled by the case of *Amsinck v. Bean*, 22 Wall. 395, 22 L. Ed. 801, where it was held that, while the assignee (trustee) in bankruptcy of the joint stock and property of a partnership is required by the statute to administer the separate estate of the individual members as well as that of the firm, there is no reciprocal regulation with regard to the estate of the partnership where an individual member of it has alone been adjudged a bankrupt."

In the *Amsinck v. Bean* case, one of the partners constituting a copartnership had furnished the greater part of the capital invested by the firm, and was a large creditor thereof. The other partner had suffered him, after the firm had ceased paying its creditors, to take charge of the partnership assets and manage them as if they had been owned by him individually. The managing partner proposed and made settlements with creditors of the firm on

a basis of 70 cents on the dollar, took the partnership stock, transacted business in his own name, bought and sold new stock and mingled funds, but the court held that such acts did not dissolve the partnership, and that a decree of bankruptcy against the managing partner individually did not pass the partnership assets to his assignee in bankruptcy. The trustee of the bankrupt estate of Carl E. Coover has no interest in the firm assets further than the bankrupt's share of the surplus of those assets that may be left over after the firm's debts are paid, if there be any. The adjudication of the partnership as a bankrupt would not pass the assets of the firm to the trustee of the firm for administration without the consent of the solvent partner, and much greater is the reason why the insolvency and adjudication of one of the individuals of the firm should not operate to transfer the assets of perhaps a solvent firm to the bankruptcy court for administration. If the attachment lien of plaintiff in error could be destroyed by such a proceeding, then the creditors of solvent firms could have no protection in the enforcement of their claims by the provisional remedies prescribed by the statute or by execution, so long as the firm contains a member who is individually insolvent; for by voluntary application of that individual partner for an adjudication as a bankrupt such liens would all be discharged.

*In re Harris* (D. C.) 108 Fed. 517, is cited and relied upon by defendants in error, but that case is not in point. In that case a person was adjudged a bankrupt as the sole owner of a business conducted in the name of a company. Throughout the entire bankruptcy proceedings the assets of the bankrupt, which were composed entirely of the assets of the company, were treated by the bankrupt and by his creditors who were composed entirely of the creditors of the company as the property of the bankrupt. The evidence in the case disclosed a silent partner who himself permitted the court and the bankrupt and his creditors to treat the assets of the company as the individual property of the bankrupt member; and the court held under those circumstances that the distribution of the estate would be made on the basis that the

assets were the property of the individual bankrupt. What representation was made by the bankrupt in the bankruptcy proceedings in this case as to the ownership of the partnership assets the record does not disclose, nor does it disclose whether the partnership creditors, if any such there are, have participated in that proceeding, or whether it has been participated in only by the individual creditors of the bankrupt. Prior to his adjudication, the record does disclose that the bankrupt represented that his father was an interested partner in the business, and held him out to the world as such. Plaintiff in error relied upon such fact when it extended credit to the firm, and has never consented that the property of the firm should be treated as the assets of the bankrupt, nor has it by its acts estopped itself from now asserting that such property is not the property of the bankrupt. It has at all times insisted upon its right to have the assets attached by it applied to the payment of its claim against the partnership. Its claim and contention are similar to those of the creditors in the case of *In re Mercur, supra;* the only difference being that in that case the creditors obtained a lien upon the assets of the firm within four months prior to the adjudication of the individual partners as bankrupt by virtue of an assignment by the firm for the benefit of the firm's creditors, whereas, in this case plaintiff obtained his lien by means of an attachment. The principle involved in both cases is the same. No contention is made that the grounds of attachment were not established by the evidence; and there is evidence reasonably tending to support same. The only reason presented for dissolution of the attachment was that the adjudication of the junior member of the partnership as a bankrupt operated as a discharge of the attachment and passed the property to the bankrupt's estate.

It follows from the views already expressed that the judgment of the trial court must be reversed and the cause is remanded, with instructions to enter judgment in conformity with this opinion.

All the Justices concur.